The STATE of Texas, Appellant,

v.

Michael Todd GILL, Appellee.

No. 03–97–00588–CR.

Court of Appeals of Texas,
Austin.

April 24, 1998.

Before YEAKEL, C.J., and KIDD and
DAVIS,*JJ.

KIDD, Justice.

Appellee Michael Todd Gill was convicted
on one count of aggravated assault and sen-
tenced to serve twenty years in the state
penitentiary. After judgment was rendered,
Gill filed a motion for new trial on the ground
of ineffective assistance of counsel. Follow-
ing two evidentiary hearings, the motion for
new trial was granted. In two points of
error, the State argues that the trial court
abused its discretion in granting Gill a new
trial. We will affirm.

---

* Before Tom G. Davis, Judge (retired), Court of
Criminal Appeals, sitting by assignment. *See*

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

## BACKGROUND

This case presents some very unique facts. Michael Todd Gill was indicted on two counts of aggravated assault for allegedly striking his girlfriend, Kimberly Cote, with a claw hammer on one occasion and burning her with a frying pan on a separate occasion. Following the indictment, Gill hired attorney Jack Bundrant to substitute for his court-appointed attorney. Gill stated to the court that he wanted Bundrant as his trial attorney despite Bundrant's past health problems and recent hospital stay for ongoing health problems.

Fearing the potential for a mistrial due to Bundrant's health, the State requested an *in camera* hearing to allow the court to reconsider its decision to substitute Bundrant as Gill's counsel. After Bundrant denied any lingering effects from his health problems and assured the trial court that he was capable of handling Gill's defense, the case proceeded to trial.

At the conclusion of the evidence, the jury returned a verdict convicting Gill on one count of aggravated assault for striking Cote with a claw hammer and sentenced him to twenty years in the state penitentiary.[1] Judgment was rendered accordingly. Following the entry of judgment, Gill filed a motion for new trial on the ground of ineffective assistance of counsel. As discussed in more detail below, Gill asserted that Bundrant's poor mental and physical condition prevented him from effectively representing Gill at trial. Pursuant to Gill's motion, the court conducted two evidentiary hearings in which extensive medical records and testimony concerning Bundrant's health were reviewed by the court. Following these evidentiary hearings, the trial court, without stating a reason, granted Gill's motion for new trial. The State appeals.

## DISCUSSION

■ It is well-established that the granting of a motion for new trial rests within the sound discretion of the trial court. *See State v. Gonzalez*, 820 S.W.2d 9, 12 (Tex.

App.—Dallas 1991), *aff'd* 855 S.W.2d 692, 694 (Tex.Crim.App.1993). The ruling of a trial judge is presumed to be correct and the burden rests upon the appellant to establish the contrary. *Lee v. State*, 167 Tex.Crim. 608, 322 S.W.2d 260, 262 (1958). Furthermore, when no findings of fact or conclusions of law are made by the trial court, we uphold the judgment if any appropriate ground exists to support it. *See State v. Read*, 965 S.W.2d 74, 77 (Tex.App.—Austin 1998, no pet. h.).

■ In two points of error, the State argues that the trial court abused its discretion by failing to adhere to the well-established *Strickland* test governing claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires that a defendant establish by a preponderance of the evidence that (1) counsel's representation fell below the standard of professional norms, and (2) but for counsel's deficiency, there is a reasonable probability that the outcome would have been different. *Id.* The State contends primarily that this is an objective test which requires Gill to point to the *record* and identify *specific* acts or omissions *by* Bundrant that were below the professional norm of reasonableness and led to an improper verdict. The State therefore challenges this Court to review the record and find such an act or omission that would uphold the trial court's judgment in granting Gill a new trial.

Gill, on the other hand, argues that in a case of this kind, where the attorney's *mental and physical condition* are called into question, the trial court is allowed to consider factors which may or may not be apparent on the face of the record, but *did render counsel ineffective*. Therefore, Gill contends that the trial court had the discretion to grant a new trial if it determined that Bundrant's physical and mental deficiencies themselves resulted in defense counsel being ineffective.

---

1. Gill was acquitted on the second count of aggravated assault for allegedly burning Cote with a frying pan.

■ The State's contention that *Strickland* is an objective test that requires the defendant to point out "legal errors" which exist on the record is not without merit. However, it fails to consider two important points governing our review of this order granting a new trial. First, we do not review the *Strickland* standards in a *de novo* fashion; we review them through the prism of an abuse of discretion standard. Therefore, we must examine whether the trial court's decision to grant a new trial was so outside the zone of reasonable disagreement that it is subject to reversal. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992) (if trial judge's decision is so clearly wrong as to lie outside zone within which reasonable persons might disagree then decision should be reversed).

■ Second, as stated above, because no findings of fact or conclusions of law were either requested or made by the trial court, the court's judgment granting a new trial must be upheld if *any* appropriate ground exists to support it. *Read,* at 77. We note that one such ground is that the trial court retains the sound discretion to grant a new trial if it believes a new trial is needed in the "interest of justice." *See Gonzalez,* 855 S.W.2d at 694 (trial judges have had discretion to grant new trials in interest of justice for more than one hundred twenty years); *State v. Dixon,* 893 S.W.2d 286, 288 (Tex. App.—Texarkana 1995, no pet.) (trial court did not abuse its discretion in granting new trial in interest of justice); *State v. Lyons,* 820 S.W.2d 46, 48 (Tex.App.—Fort Worth 1991, no pet.) (trial court retains discretion to grant new trial in the interest of justice, apparently on any ground justice requires). Having said this, we will now discuss whether the trial court erred in granting Gill a new trial.

In his brief, Gill alleges various "legal errors" by Bundrant which he contends support a claim of ineffective assistance of counsel. First, during voir dire, one potential juror indicated that he was hesitant to serve because he had a brother who worked for the prison system. The juror feared that if he were on a jury that sent someone to prison, that person might hurt his brother if sent to the unit where his brother worked. Despite the court's advice that the juror's bias could work in favor of Gill, Bundrant struck the juror from the panel.

Second, Gill directs our attention to several instances where Bundrant either failed to object or made untimely objections. For example, the detective who arrested Gill testified without objection that Gill told a third party that the "bitch" (referring to Cote) "caused" him to be arrested. This testimony was obviously elicited to prejudice Gill before the jury and to discredit Cote who would later testify on Gill's behalf. Finally, Gill asserts that Bundrant ineffectively examined key witnesses which in turn prejudiced his defense. Specifically, Gill directs us to Bundrant's direct examination of Cote during the guilt/innocence phase of trial and Bundrant's cross-examination of Gill's ex-wife, Sally Gill, during the punishment phase. During Bundrant's examination of Cote, Gill asserts that Bundrant admitted Gill's guilt by asking the following question: "Are you asking the jury to be lenient with him and not send him to the penitentiary?" Gill contends that because Cote testified on Gill's behalf, Bundrant should have avoided all questions regarding punishment until the punishment phase of trial.

During Bundrant's cross-examination of Sally Gill, Gill asserts that Bundrant failed to impeach her even though she gave damaging testimony regarding Gill's past domestic violence. Gill contends that it was critical for Bundrant to impeach her with her criminal history as well as an alleged history of psychiatric hospitalization since she was the State's only witness during the punishment phase.

■ Based upon these allegations, without more, we regard this as a close case, even applying the abuse of discretion standard. We are mindful that the review of counsel's representation is highly deferential and that courts indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. However, we believe that in this case there are other factors that we must consider before deter-

mining whether the trial court abused its discretion in granting a new trial.

As stated above, Gill argues that it was well within the trial court's discretion to consider Bundrant's physical and mental deficiencies which may have rendered Bundrant ineffective at trial. We agree.

In a case in which mental and physical deficiencies of counsel are called into question, only the trial court can consider how such deficiencies affected the outcome of the case and whether "justice" requires a new trial. This is true because the trial court is in the best position to determine whether such deficiencies affected counsel's attentiveness during trial or whether such deficiencies hindered counsel's ability to argue and ask questions in a coherent or effective manner.

We further note that the record in this case is replete with evidence showing how Bundrant's ongoing health problems, such as his senility, hearing loss, and his reduced vision, hindered Gill's defense.[2] For example, Bundrant had to be consistently reminded by either the court or Gill that it was his turn to examine a witness or approach the bench. Moreover, the record shows that the trial judge's rulings often confused Bundrant, as did various rules of evidence. Finally, after the court recognized that Bundrant's paralegal, a disbarred lawyer and convicted felon, was continuously feeding Bundrant notes, the court felt it necessary to state the following: "The Court would like the record to show that Mr. Bundrant's paralegal is providing Mr. Bundrant with the necessary questions for Mr. Bundrant to ask during the course of his trial or at least it appears to the Court that he is."

Given these factors, as well as the specific errors cited above by Gill, the trial court could have reasonably determined that the integrity and reliability of the fact-finding process had been undermined and that "justice" required a new trial. Moreover, in the absence of findings of fact and conclusions of law it is impossible to determine the weight the court placed on these factors in reaching its decision to grant Gill a new trial. Therefore, we hold that on the facts of this case, the trial court was within its discretion to grant a new trial. We overrule the State's two points of error.

### CONCLUSION

Having overruled both points of error raised by the State, we affirm the trial court's order granting Gill a new trial.

---

**2.** Medical records entered into evidence at the hearing on the motion for new trial showed that Bundrant had been hospitalized less than a month before the trial. The records indicate that Bundrant was diagnosed with nineteen illnesses including: glaucoma, continuous alcohol abuse, severe heart problems, and cerebral atrophy.